IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| FREESEN, INC., a Nevada corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 07-3318 ) |
| BOART LONGYEAR COMPANY, a Utah corporation, and DIAMOND PRODUCTS LIMITED, an Ohio Limited Liability Company, | ) ) ) ) ) |
| Defendants. | ) |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Boart Longyear Company's Motion to Bar the Testimony of Edmund Cikanek (d/e 64). The instant case arises out of Plaintiff Freesen Inc.'s purchase of a highway grinder. Freesen's three-count Amended Complaint (d/e 22) alleges breach of contract (Count I), breach of express warranty (Count II), and breach of the implied warranty of merchantability (Count III) claims against both Defendants arising out of the grinder purchase. Boart asks the Court to bar Plaintiff's expert witness, Edmund Cikanek, from testifying at trial.

1

According to Boart, Cikanek is not qualified to render the opinions at issue, and furthermore, the opinions are based on pure speculation and contain no analysis. For the reasons set forth below, Boart's Motion is denied.

BACKGROUND

The following facts are taken from the allegations of Freesen's Amended Complaint. On February 2, 2005, Freesen and Boart entered into an agreement for Freesen's purchase of a highway grinder from Boart for a net price of $553,000.00 with delivery on August 15, 2005, or sooner. On or about April 29, 2005, Boart sold its grinding division to Defendant Diamond Products Limited. Freesen received a final invoice dated July 25, 2005, for the grinder from Diamond. Amended Complaint, Ex. C. Freesen paid the balance due prior to the grinder being delivered to Freesen's Joplin, Missouri, field office on July 30, 2005. According to Freesen, shortly after delivery, Freesen began experiencing a number of mechanical problems with the grinder. Freesen notified Diamond of these defects, and Diamond agreed to repair the grinder to a functional level for temporary use and to manufacture a new grinder for delivery to Freesen. Freesen received the repaired grinder on March 6, 2006, to use pending manufacture and delivery of a new grinder. Freesen continued to experience defective

performance and slowed production levels with the repaired grinder. On September 18, 2006, Diamond delivered a new grinder to Freesen as a replacement for the allegedly defective grinder.

While the first grinder was experiencing mechanical problems, prior to the delivery of the new grinder, Freesen bid on ten Missouri Department of Transportation (MODOT) jobs. Freesen was awarded two of these contracts. Freesen claims that, as a result of the grinder's mechanical problems, it modified its historic markup percentages when bidding on the MODOT jobs. According to Freesen, this markup caused it to lose out on three of the jobs, specifically MODOT job numbers 505, 802, and 803.

To support this claim, Freesen hired Edmund Cikanek, a certified public accountant (CPA). Cikanek described the scope of his retention as follows:

> to review the lost opportunity damages prepared by Freesen, Inc. and to offer [his] opinion as to whether these calculations are reasonable and consistent with construction industry accounting and estimating practices as they relate to the lost opportunity damages suffered by Freesen Inc. resulting from a defective grinding machine which resulted in Freesen losing three grinding projects.

Memorandum of Law in Support of Motion to Bar Edmund Cikanek (d/e 65) (Boart's Memorandum), Ex. B, Supplemental Lost Opportunity

3

Damages Report, dated July 24, 2009, p. 4. Cikanek issued an initial report in February 2009, opining that Freesen suffered $1,255,886.00 in lost opportunity damages due to the problems with the grinder and that this amount was consistent with construction industry accounting and estimating practices. Id., Ex. A, Lost Opportunity Damages Report, dated February 6, 2009, p. 7. On July 24, 2009, Cikanek issued a supplemental report, stating a revised opinion that Freesen suffered $1,073,310.00 in lost opportunity damages due to the problems with the grinder and that this amount was consistent with construction industry accounting and estimating practices. Id., Ex. B, Supplemental Lost Opportunity Damages Report, dated July 24, 2009, p. 9. Cikanek explained that, subsequent to his February 2009 report, he discovered an error in Freesen's calculation of overhead relating to damages which resulted in an overstatement in his previous lost opportunity damages summary. Cikanek was deposed in connection with the instant matter on July 30, 2009. Id., Ex. D, Deposition of Edmund Cikanek (Cikanek Dep.).

Defendants retained Lee Gould, a CPA and attorney, to rebut Cikanek's report. Gould issued his rebuttal report on August 24, 2009. Boart Memorandum, Ex. E, Rebuttal Report of Lee A. Gould on Damages

4

Suffered by Freesen, Inc. Gould opined that Cikanek overstated his revised total lost opportunity cost by at least $526,452.00 because he erroneously included lost equipment utilization/functional utility in the calculation. Gould further noted that Cikanek did not independently analyze the elements of lost opportunity costs claimed by Freesen and the underlying information provided to him by Freesen. According to Gould, Cikanek's decision to utilize a $.35 per hour rate for calculating overhead is unsupported because Cikanek did not analyze Freesen's total overhead absorption rate for 2005 and compare it to Freesen's actual annual overhead incurred. Gould also opined that Freesen did not have consistent historical and customary mark-ups that could be used as a benchmark. Gould further opined that Cikanek's opinion was faulty because it failed to consider other inefficiencies and mitigation and erroneously included damages relating to a grinder not at issue in the instant litigation. Finally, Gould opined that there is no historical support for the profitability of the MODOT jobs and that the lowest bidder is not guaranteed to be awarded each MODOT job.

## ANALYSIS

Boart seeks to exclude Cikanek's testimony under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,

5

challenging both Cikanek's qualifications and his methodology. Daubert, 509 U.S. 579 (1993). Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Court must determine whether a party's proposed expert is qualified, whether his opinions are grounded in a proper basis, and whether his testimony will assist the jury. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 593. Freesen, as the proponent of the expert, bears the burden of demonstrating that Cikanek's testimony would satisfy this standard. See Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000 Amends.)).

Boart first asserts that the opinions at issue are outside the scope of Cikanek's expertise, i.e., that Cikanek lacks sufficient knowledge and experience because he has no experience calculating lost opportunity damages and he has not written about, taught, or testified regarding lost

opportunity damages. In its argument, Boart contrasts Cikanek's background to Gould's background. Boart characterizes Gould as having "vast experience in lost profits and damages analyses." Boart Memorandum, p. 8. However, it is for the jury to weigh the strength of the competing experts' qualifications. Rule 702 requires that an expert be qualified as such "by knowledge, skill, experience, training, or education." The Court functions as a "gatekeeper" whose role is "to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998).

Cikanek has been a CPA since 1974 and has over twenty years experience in the field of construction accounting. Boart Memorandum, Ex. B, Supplemental Lost Opportunity Damages Report, dated July 24, 2009, Appendix A – Qualifications. He is a certified fraud examiner and has been certified in financial forensics as well. Id. He is a member and past chairman of the Illinois CPA Society Construction Contractors Committee and a co-author of a chapter on claim recognition, enforcement and defenses in the Illinois Construction Law Handbook published by the Illinois Institute of Continuing Legal Education. Id. The Court finds that Cikanek

has the requisite experience and training to render the opinions at issue, which fall within the competence of a CPA. The Seventh Circuit has expressly rejected the notion that <u>Daubert</u> requires particular credentials for an expert witness, noting that "anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." <u>Tuf Racing Products, Inc. v. American Suzuki Motor Corp.</u>, 223 F.3d 585, 591 (7th Cir. 2000). Cikanek's alleged lack of experience in one specific area goes to the weight of his testimony, not its admissibility. Thus, the first step of the analysis favors admission of Cikanek's testimony.

The Court must also determine whether Cikanek has a proper basis for his opinions and employed valid methodology. Boart contends that Cikanek merely mathematically tested calculations prepared by Freesen and did not independently analyze the elements that Freesen claimed to have suffered. It is undisputed that Cikanek was not retained to conduct independent calculations. <u>Cikanek Dep.</u>, p. 55-56. However, it is clear from Cikanek's report that he analyzed the calculations to determine whether they were reasonable and consistent with construction industry accounting and estimating practices. <u>Boart's Memorandum</u>, Ex. B,

Supplemental Lost Opportunity Damages Report, dated July 24, 2009, p. 4. Furthermore, reliance on second-hand information is not, in and of itself, fatal to expert analysis. See Swplaza III, LLC v. TSA Stores, Inc., 2008 WL 703871, at *5 (C.D. Ill. March 11, 2008). Freesen asserts that it will establish an evidentiary basis at trial for the factual assumptions upon which Cikanek relied. Provided that that evidentiary foundation is laid, then the depth of Cikanek's inquiry goes to the weight of his testimony and is a matter for cross-examination.

Boart also argues that Cikanek deviated from relevant professional standards in analyzing Freesen's claim as one for lost opportunity damages, rather than as a lost profit claim. However, the Seventh Circuit recognizes opportunity cost as a component of economic loss. See Cole Energy Development Co. v. Ingersoll-Rand Co., 913 F.2d 1194, 1202-03 (7th Cir. 1990). Cikanek defined lost opportunity as "a potential to obtain a job and subsequently not obtain the job and, therefore, lose out on the opportunity that that entails with that job." Cikanek Dep., p. 56. This definition is not inconsistent with Boart's proffered generally accepted definition of lost profits as "damages equal to the difference between the profits that the plaintiff would have realized but for the defendant's actions and the

plaintiff's actual profits." Boart Memorandum, Ex. E, Rebuttal Report of Lee A. Gould on Damages Suffered by Freesen, Inc., p. 10. The record shows no deviation from relevant professional standards arising out of Cikanek's definition of lost opportunity damages. Boart further contends that Cikanek's calculations erroneously failed to consider a number of relevant factors including other inefficiencies, Freesen's historic profits on similar jobs, and Freesen's capacity to complete the jobs. Boart Memorandum, p. 12-13. These criticisms of Cikanek's methodology are not grounds for exclusion, but rather constitute grounds for rebuttal. The Court is satisfied that Cikanek's opinions satisfy the second step of the Daubert analysis.

Finally, the Court must determine whether Cikanek's opinions will aid the trier of fact. The Court finds that they will. If the jury finds Defendants liable, Cikanek's testimony will assist the jury in analyzing damages relating to MODOT job numbers 505, 802, and 803. Therefore, the Court will not exclude Cikanek's expert testimony.

THEREFORE, Defendant Boart Longyear Company's Motion to Bar the Testimony of Edmund Cikanek (d/e 64) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: December 8, 2009

FOR THE COURT:

                     s/ Jeanne E. Scott
                  JEANNE E. SCOTT
            UNITED STATES DISTRICT JUDGE