## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED CONTRACTORS MIDWEST, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  07-3318 |
| BOART LONGYEAR COMPANY, a Utah corporation, and DIAMOND PRODUCTS LIMITED, an Ohio Limited Liability Company, | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Boart Longyear Company's Motion for Summary Judgment against Diamond Products Limited (d/e 66) (Motion for Summary Judgment) and Defendant Diamond Products Limited's Motion for Leave to Supplement to Its Response to Boart Longyear Company's Motion for Summary Judgment (d/e 97) (Diamond's Motion to Supplement).  The instant case arises out of Freesen, Inc.'s purchase of a highway grinder.  On December 31, 2009, Freesen, Inc.

1

was merged into Plaintiff United Contractors Midwest Inc. By Text Order, dated January 20, 2010, United Contractors Midwest, Inc. was substituted for Freesen, Inc. as the Plaintiff in this matter. At that time, the pending motions were fully briefed. For clarity and consistency with the briefing, the Court will refer to Plaintiff as Freesen throughout this Order.

Freesen initially contracted with Defendant Boart for the purchase of the highway grinder; however, prior to delivery of the grinder, Defendant Boart sold its grinding division to Defendant Diamond, pursuant to an Asset Purchase Agreement. Freesen's three-count Amended Complaint (d/e 22) alleges breach of contract, breach of express warranty, and breach of the implied warranty of merchantability claims against both Defendants arising out of the grinder purchase. Defendants Boart and Diamond have filed cross-claims, which are at issue in the pending Motion. <u>Defendant Diamond Products Answer and Affirmative Defenses to Amended Complaint and Second Amended Crossclaim Against Defendant Boart Longyear Company (d/e 24) (Diamond's Second Amended Crossclaim)</u>; <u>Boart Longyear Company's Answer and Affirmative Defenses to Diamond Products Limited's Second Amended Crossclaim and Crossclaim Against Diamond Products Limited (d/e 39) (Boart's Crossclaim)</u>.

Boart's Crossclaim against Diamond seeks indemnification under the Diamond-Boart Asset Purchase Agreement. Defendant Diamond's Second Amended Crossclaim against Boart, alleges claims for breach of contract for sale of grinder (Count 1), breach of the Diamond-Boart Asset Purchase Agreement (Count 2), contractual indemnity (Count 3), and breach of implied warranty of merchantability (Count 4). In the instant Motion, Boart seeks summary judgment in its favor on its Crossclaim and on all counts of Diamond's Second Amended Crossclaim. For the reasons set forth below, Diamond's Motion to Supplement is allowed, and Boart's Motion for Summary Judgment is allowed, in part, and denied, in part.

## I.    DIAMOND'S MOTION TO SUPPLEMENT

Boart's Motion for Summary Judgment lists ninety-three statements of fact, deemed by Boart to be undisputed and material pursuant to Local Rule 7.1(D)(1)(b). Motion for Summary Judgment, p. 4-17. In its response to the Motion for Summary Judgment, Diamond concedes that twenty-two of Boart's proffered undisputed, material facts are indeed undisputed and material. Defendant Diamond Products Limited's Response to Boart Longyear Company's Motion for Summary Judgment (d/e 74) (Diamond's Response), p. 4. Diamond designates Boart's Statement of Material Fact

Nos. 38 and 43 as disputed. Id. Diamond designates Boart's remaining proffered undisputed, material facts as immaterial. Id., p. 5.

Local Rule 7.1(D)(2)(b)(2) directs a party responding to a motion for summary judgment to list by number each fact that is claimed to be disputed and states that "[e]ach such claim of disputed fact must be supported by evidentiary documentation referenced by specific page." Local Rule 7.1(D)(2)(b)(3) directs a party responding to a motion for summary judgment to list by number each fact that is claimed to be immaterial and the reason for such claim. In its reply, Boart correctly notes that Diamond failed to provide evidentiary documentation relating to the two claimed disputed facts and failed to provide a reason for any of the claimed immaterial facts. <u>Boart Longyear Company's Reply in Support of Its Motion for Summary Judgment Against Diamond Products Limited (d/e 96) (Boart's Reply)</u>, p. 2. Boart asks the Court to deem all of Boart's proffered facts to be undisputed and material based on Diamond's failure to comply with Local Rule.

Three days after Boart's Reply was filed, Diamond filed the pending Motion to Supplement seeking to rectify the identified shortcomings. Boart opposes the Motion to Supplement. <u>Boart Longyear Company's Response</u>

in Opposition to Diamond Products Limited's Motion for Leave to Supplement (d/e 101).  However, under the circumstances, the Court finds that Diamond should be allowed to supplement its Response.  Diamond made its request soon after the shortcomings were identified by Boart's Reply, and Boart will not be prejudiced by the proffered supplement.  The majority of the facts at issue were deemed immaterial, but were not disputed, by Diamond.  Thus, the Court will deem these facts undisputed in ruling on the Motion for Summary Judgment, and the argument section of Diamond's Response adequately explained the reasons Diamond believed these facts were immaterial.

With respect to the two facts that Diamond designated disputed, the Court will look to the record as a whole to determine whether these facts are actually established.  The evidentiary support that Diamond seeks to identify in its supplement is already a part of the record.  In disputing Boart's Statement of Material Fact No. 38, Diamond relies on Freesen's Amended Complaint (d/e 22) and Diamond's Answer (d/e 24).  Diamond disputes Boart's Statement of Material Fact No. 43 to the extent it asserts that the serial number of the Freesen grinder was 113805.  According to Diamond, the serial number of the Freesen grinder was 113705.  Diamond

seeks to support its assertion with invoices noting a serial number of 113705. An invoice noting a serial number of 113705 is already a part of the record. <u>Diamond's Second Amended Crossclaim</u>, Ex. C. Therefore, Diamond's Motion to Supplement is allowed, and the Court will consider Diamond's supplemental response in ruling on Boart's Motion for Summary Judgment. <u>Motion to Supplement</u>, Ex. A.

II.    <u>BOART'S MOTION FOR SUMMARY JUDGMENT</u>

Unless otherwise noted, the following facts are deemed undisputed. Boart and Freesen entered into a Purchase Agreement, dated January 24, 2005, for the purchase of a PC 6000EC highway grinder, for a net price of $553,000.00, with a 10% deposit due at the time of the order. <u>See Diamond's Response</u>, Ex. 5. Under the terms of the grinder Purchase Agreement, delivery of the grinder was to be August 15, 2005, or sooner, and the balance of $497,700.00 plus tax and freight was due prior to shipping of the grinder. <u>Id</u>.

On April 29, 2005, Boart and Diamond executed an Asset Purchase Agreement (APA), under which Diamond purchased assets that Boart used in manufacturing and selling grooving and grinding equipment (designated "the Product Line Business" by the APA), including Boart's rights under

expressly identified Assumed Contracts. A copy of the APA is before the Court. <u>Motion for Summary Judgment</u>, Ex. 1. One of the Assumed Contracts was the grinder Purchase Agreement, dated January 24, 2005, between Boart and Freesen. <u>Id</u>., p. 52. Diamond also acquired all customer deposits that Boart had received for orders in the Product Line Business that were unfilled as of the closing date of the APA. <u>Id</u>., p. 5.

Under § 3.1(a) of the APA, Diamond expressly assumed certain liabilities of Boart, including "[l]iabilities and obligations of [Boart] under the executory portion of any Assumed Contract or Purchase Order accruing from and after the Closing, but not including any liability or obligation for any breach thereof occurring prior to the Closing Date." <u>Motion for Summary Judgment</u>, Ex. 1, p. 5. As a part of the APA, Boart and Diamond executed a Bill of Sale, Assignment and Assumption Agreement (Bill of Sale), dated April 29, 2005. <u>Id</u>., Ex. 1, p. 31-34. Under the Bill of Sale, Boart transferred all of the rights, title, and interest in the Assumed Liabilities, as defined in § 3.1 of the APA, to Diamond. <u>Id</u>., p. 31. The Bill of Sale also stated that Diamond assumed the Assumed Liabilities and agreed to pay, perform, and discharge them when due. <u>Id</u>.

The APA contained provisions regarding employee matters. Under §

9.2, Diamond agreed to offer employment to all Boart employees active in the Product Line Business, except Louis Silay and Pat Muncy.  Under § 9.2(b), Boart agreed to continue to employ Silay through December 31, 2005 and to make Silay available as a consultant to Diamond for up to 75% of Silay's working time.  Under § 9.2(d), Boart agreed to make Muncy available to Diamond as a consultant for service work and field start up from the closing date of the APA through December 31, 2005.

The APA also contained indemnification covenants.  Under § 10.2 of the APA, Diamond agreed to:

> indemnify [Boart] from and against all liability, demands, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses, including reasonable attorneys' fees sustained or incurred by [Boart] as a result of or arising out of or by virtue of: . . . (v) any claim arising out of the sale of products manufactured or operation of the Product Line Business on or after the Closing Date.

Motion for Summary Judgment, Ex. 1, p. 18.  Under §10.3, Boart agreed to:

> indemnify [Diamond] from and against all liability, demands, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses, including reasonable attorneys' fees sustained or incurred by [Diamond] as a result of or arising out of or by virtue of: . . . (v) any claim arising out of the sale of products or operation of the Product Line Business by [Boart] prior to the Closing Date.

Id.

The APA contained an exclusive remedy provision, § 10.6, under which the parties agreed, subject to Diamond's right to seek specific performance and injunction to enforce the terms of the APA's non-compete clause, as follows:

> the enforcement of the agreements of indemnification contained in this Article X shall be, after the Closing Date, the exclusive remedy of the parties hereto for any claims with respect to matters covered in Sections 10.2 or 10.3 hereof, whether sounding in tort, contract or otherwise, and the parties hereto waive all remedies otherwise available to such parties save only remedies which by law may not be waived.

Motion for Summary Judgment, Ex. 1, p. 19. Additionally, § 11.6 of the APA, entitled "Entire Agreement," provides:

> This Agreement and the Schedules and Exhibits hereto constitute the entire agreement between the parties and shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns. THERE ARE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, GIVEN BY EITHER PARTY TO THE OTHER PARTY EXCEPT AS PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY OR SUITABILITY.

Id., Ex. 1, p. 21. According to the APA, any questions concerning its validity, enforceability, construction, or interpretation should be determined under Utah law. Id., Ex. 1, p. 22.

On April 29, 2005, Boart and Diamond also entered into a Consulting Agreement and a Sales Representative Agreement (SRA), both of which state that Ohio law will govern. <u>Motion for Summary Judgment</u>, Ex. 1, p. 35-41, <u>Consulting Agreement</u> & p. 42-45, <u>Sales Representative Agreement</u>. The Consulting Agreement addressed the Silay/Muncy consulting arrangement in detail, consistent with the provisions of § 9.2 of the APA. Under the SRA, Boart agreed to act as a sales representative for Diamond to provide sales support with respect to eleven expressly identified open orders, including the order for the Freesen grinder. <u>Motion for Summary Judgment</u>, Ex. 1, p. 42 & 45. The SRA provided that this sales support would be directed specifically by Diamond President Karl Moller or his designee. <u>Id</u>. at 42.

Prior to the execution of the APA, Lang Exploratory Drilling, a company wholly owned by Boart, manufactured several 6000 model grinders for sale by Boart, including the model of the Freesen grinder at issue here, at a facility in Salt Lake City, Utah. Boart concedes, but deems immaterial, the fact that the manufacture of the Freesen grinder by Lang Exploratory Drilling began before the APA was executed. <u>Diamond's Response</u>, p. 6, Additional Material Fact 7; <u>Boart's Reply</u>, p. 3. After the

execution of the APA, Lang Exploratory Drilling continued to manufacture all of the 6000 model grinders that were in production, including the Freesen grinder. <u>Diamond's Response</u>, p. 6, Additional Material Fact 8; <u>Boart's Reply</u>, p. 3. Additionally, after Diamond's acquisition of the Product Line Business, the PC 6000EC model grinders continued to be built at the Lang facility through June 2006, based on an agreement between Boart and Lang, while Diamond expanded its manufacturing facility in Oakdale, California.[1] <u>Motion for Summary Judgment</u>, p. 9, Undisputed Material Fact No. 30; <u>Diamond's Response</u>, p. 4.

Production of the Freesen grinder was completed in either July or August 2005. It is undisputed that Diamond received final payment in the amount of $579,407.15 from Freesen for the grinder prior to its delivery to Freesen and that Diamond arranged for delivery of the grinder to Freesen. <u>Motion for Summary Judgment</u>, p. 10, Undisputed Material Fact No. 37;

---

[1]The Oakdale, California facility had belonged to Boart and was transferred to Diamond under the APA. Diamond's Grooving and Grinding Director Todd Thompson testified in his deposition that the Oakdale facility was expanded after Diamond's acquisition of the Product Line Business. <u>Motion for Summary Judgment</u>, Ex. 3, p. 57-58. Boart's Statement of Material Fact No. 30 states that the grinders were manufactured by Lang based on an agreement between Lang and Boart. However, according to Thompson, Diamond was a part of an agreement under which the Lang facility in Salt Lake City would build a certain number of grinders up to a specific point in time, after which manufacturing would be taken over by the Oakdale facility, without need for subcontracted help to keep up with the demand. <u>Id</u>., p. 57.

*Diamond's Response*, p. 4; *Motion for Summary Judgment*, p. 11, Undisputed Material Fact No. 44; *Diamond's Response*, p. 5. Diamond does not dispute that, after the acquisition, it had a standard warranty for PC 6000 grinders and that the owner's manual for the PC 6000EC grinder was changed to reflect that Diamond owned the Product Line Business. Diamond provided the warranty for the Freesen grinder and the owner's manual for the Freesen grinder would have shipped from Diamond's Oakdale, California facility.

Prior to delivery of the Freesen grinder, Diamond employee Jody Scott traveled to Salt Lake City to inspect the Freesen grinder. Scott spent three to four hours inspecting the Freesen grinder and did not notice any vibration while the grinder was running. After the grinder was delivered to Freesen, Scott went to Freesen's job site and provided training and start up services from August 8 to August 11, 2005.

In the fall of 2005, Freesen reported to Diamond that it was experiencing problems with the grinder, including unusual vibration. Diamond employees Jody Scott and Skip Hoeheisel were sent out in the field to perform repairs on the grinder at the direction of Rob Silay. Muncy was also sent out to attempt to address the problems that Freesen was

reporting. Eventually, Diamond employee Andy Jedick decided to replace the Freesen grinder as a public relations gesture. Diamond built a replacement grinder at the Oakdale, California facility and delivered it to Freesen on September 18, 2006.

After discussions regarding monetary damages relating to the alleged defects in the grinder, on September 5, 2007, Freesen sent a settlement demand to both Diamond and Boart. On October 30, 2007, Diamond demanded indemnification from Boart. Freesen filed the instant lawsuit in November 2007 in state court. The matter was later removed to this Court.

ANALYSIS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if it could affect the outcome of the suit under the applicable law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court may not weigh the evidence, but must determine whether there is a genuine

issue of material fact that warrants trial. Id. at 249. In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party, here Diamond, and must draw all reasonable inferences in Diamond's favor. See id. at 255. As the Seventh Circuit has recognized, "summary judgment is particularly appropriate in cases involving contract interpretation." Lewitton v. ITA Software, Inc., 585 F.3d 377, 379 (7th Cir. 2009). The parties agree that Utah law governs the interpretation of the APA, as set out in § 11.12 of the APA.

I.    INDEMNIFICATION

Boart's Crossclaim asserts that Boart is entitled to indemnification from Diamond on all of Freesen's claims, pursuant to § 10.2(v) of the APA. Conversely, Count 3 of Diamond's Second Amended Crossclaim asserts that Diamond is entitled to indemnification from Boart, pursuant to § 10.3(v) of the APA, and Count 2 of Diamond's Second Amended Crossclaim contends that Boart breached § 10.3 of the APA by refusing to indemnify Diamond. Boart contends that it is entitled to summary judgment on each of these claims. The Court agrees.

In contract interpretation cases, the intentions of the parties are controlling. Central Florida Investments, Inc. v. Parkwest Associates, 40

P.3d 599, 605 (Utah 2002). The Court must "first look to the four corners of the agreement to determine the intentions of the parties. If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." Id. (internal quotations and citations omitted).

Under the unambiguous language of the APA, Boart is contractually obligated to indemnify Diamond for any claim arising out of: (1) the sale of products prior to April 29, 2005 or (2) the operation of the Product Line Business prior to April 29, 2005. The APA clearly obligates Diamond to indemnify Boart for any claim arising out of: (1) the sale of products manufactured on or after April 29, 2005 or (2) the operation of the Product Line Business on or after April 29, 2005.

Freesen alleges a breach of contract claim, a breach of express warranty claim, and a breach of implied warranty of merchantability claim. The Utah Supreme Court has held that "'[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion.'" Valley Colour, Inc. v. Beuchert Builders, Inc., 944 P.2d 361, 364 (Utah 1997) (quoting 51

Am.Jur.2d Limitation of Actions § 107 (1970))); <u>see also</u> Utah Code Annotated § 70A-2-725(2) ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.") Thus, Freesen's claims arose at the earliest at the time of delivery, which occurred several months after the acquisition. Additionally, under Utah law, a sale occurs with "the passing of title from the seller to the buyer for a price" and "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Utah Code Ann. §§ 70A-2-106(1) & 70A-2-401(2).

It is clear that the claims arose out of the sale of a product manufactured after April 29, 2005, and out of Diamond's operation of the Product Line Business after April 29, 2005, and not from the sale of products prior to April 29, 2005, or from Boart's operation of the Product Line Business prior to April 29, 2005. The undisputed facts reveal the following. Although Boart originally contracted with Freesen for the grinder purchase, Diamond expressly assumed the Freesen Purchase Agreement as

a part of the APA, and under Utah law, the sale occurred at the time of delivery not at the time of the Purchase Agreement. Under the APA, after April 29, 2005, Diamond owned the Product Line Business. Manufacture of the Freesen grinder was completed after April 29, 2005. The fact the grinder was manufactured at Lang's Salt Lake City facility pursuant to an agreement regarding work in progress does not alter the fact that Diamond assumed responsibility for its manufacture under the APA. Similarly, the involvement of Boart employees with the grinder was based on agreement between Diamond and Boart. Diamond inspected the grinder prior to delivery to Freesen. Diamond received the down payment for the Freesen grinder as a part of its acquisition of the Product Line Business. Diamond received the balance due from Freesen and arranged delivery of the Freesen grinder. Diamond provided the warranty and owner's manual for the Freesen grinder.

Thus, the undisputed evidence reveals that Freesen's claims arose out of the sale of a product manufactured after April 29, 2005, and out of Diamond's operation of the Product Line Business after April 29, 2005. Diamond is contractually obligated to indemnify Boart under § 10.2 of the APA. Boart is entitled to summary judgment on its Crossclaim.

Furthermore, even when viewed in the light most favorable to Diamond, the evidence is insufficient to support a finding that Freesen's claims arose out of a sale prior to April 29, 2005, or from Boart's operation of the Product Line Business prior to April 29, 2005, such that Boart would be required to indemnify Diamond under § 10.3 of the APA. Boart is entitled to summary judgment on Counts 2 and 3 of Diamond's Second Amended Crossclaim.

II. <u>BREACH OF CONTRACT FOR SALE OF GRINDER</u>

Count 1 of Diamond's Second Amended Crossclaim alleges as follows:

> although Diamond has denied that it breached the Purchase Agreement between Freesen and Boart, to the extent Boart's manufacture of the Grinder resulted in material defects in the condition of the Grinder, Boart's sale of the defective Grinder to Diamond constituted a breach of the contract by which Boart sold the Grinder to Diamond.

<u>Diamond's Second Amended Crossclaim</u>, p. 8. Diamond asserts that Boart sold Diamond the Freesen grinder in a different transaction at a completely different time from the APA. The record evidence does not support this assertion. Under § 2.1(b) of the APA, Boart transferred its right, title, and interest in "inventories of [Boart] used or held for use in the Product Line Business, including raw materials, sub-assemblies, work-in-progress, finished products and spare parts" to Diamond on the closing date. The Freesen

grinder was work-in-progress as of April 29, 2005; thus, Boart sold the Freesen grinder to Diamond as a part of the APA.

Boart contends that the exclusive remedy provision of APA § 10.6 bars Diamond's breach of contract for sale of grinder claim. Section 10.6 provides as follows:

> Subject to the right of [Diamond] to seek specific performance and injunction to enforce the terms of any [non-compete] covenant in Section 9.4, the enforcement of the agreements of indemnification contained in this Article X shall be, after the Closing Date, the exclusive remedy of the parties hereto for any claims with respect to matters covered in Sections 10.2 or 10.3 hereof, whether sounding in tort, contract or otherwise, and the parties hereto waive all remedies otherwise available to such parties save only remedies which by law may not be waived.

Motion for Summary Judgment, Ex. 1, p. 19. According to Boart, the parties agreed that the indemnification provisions in §§ 10.2 and 10.3 would be the exclusive remedy for any claims; however, the plain language of § 10.6 is not so broad. Section 10.6's exclusive remedy provision is limited to claims relating to matters covered in §§ 10.2 and 10.3. A claim that alleges that Boart breached the APA by selling Diamond a defective work-in-progress grinder on April 29, 2005, is unrelated to the indemnification provisions of §§ 10.2 and 10.3. Because the exclusive remedy provision is the only basis advanced in Boart's request for summary

judgment on Count 1 of Diamond's Second Amended Crossclaim, summary judgment is denied on Count 1.

### III.   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Count 4 of Diamond's Second Amended Crossclaim alleges that Boart's sale of the defective and unmerchantable Freesen grinder to Diamond constituted a breach of the implied warranty of merchantability.[2] As set forth above, Boart sold the Freesen grinder to Diamond as a part of the APA.  Under § 11.6 of the APA, Boart and Diamond expressly waived express and implied warranties as follows:

> THERE ARE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, GIVEN BY EITHER PARTY TO THE OTHER PARTY EXCEPT AS PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY OR SUITABILITY.

Motion for Summary Judgment, Ex. 1, p. 21.  This language is sufficient to exclude an implied warranty of merchantability under Utah law.  See Utah Code Ann. § 70A-2-316(2) ("to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability

---

[2]Diamond's Crossclaim asserts that Boart breached the implied warranty of merchantability set out in 810 ILCS 5/2-314.  Diamond does not address this choice of Illinois law.  The Court notes that Utah Code Ann. § 70A-2-314 contains a parallel Uniform Commercial Code-based implied warranty of merchantability.

and in case of a writing must be conspicuous"). Therefore, Diamond's breach of the implied warranty of merchantability claim is barred by § 11.6 of the APA, and Boart is entitled to summary judgment on Count 4 of Diamond's Second Amended Crossclaim.

CONCLUSION

THEREFORE, for the reasons set forth above, Defendant Diamond Products Limited's Motion for Leave to Supplement to Its Response to Boart Longyear Company's Motion for Summary Judgment (d/e 97) is ALLOWED, and Defendant Boart Longyear Company's Motion for Summary Judgment against Diamond Products Limited (d/e 66) is ALLOWED, in part, and denied, in part. Summary judgment is entered in favor of Boart Longyear Company and against Diamond Products Limited on Boart's Crossclaim and on Counts 2, 3, and 4 of Diamond's Second Amended Crossclaim. Boart's request for summary judgment on Count 1 of Diamond's Second Amended Crossclaim is denied.

IT IS THEREFORE SO ORDERED.

ENTER: March 19, 2010

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE